**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AISHA AIKENS,<br><br>                              Plaintiff,<br><br>  -against-<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br>TRANS UNION, LLC,<br>LEXISNEXIS RISK SOLUTIONS, INC., and<br>VALIDIFI, LLC,<br><br>                            Defendant(s). | Case No.: 1:23-cv-13833<br><br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Aisha Aikens, by and through counsel, as and for this Class Action Complaint against Defendants Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), LexisNexis Risk Solutions, Inc. ("Lexis Solutions"), and ValidiFI, LLC ("ValidiFI") (Experian, Trans Union, Lexis Solutions, and ValidiFI each a "Bureau" and collectively "Bureaus"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, respectfully sets forth, complains and alleges, upon information and belief, the following:

1. Plaintiff brings this class action individually and on behalf of a class of all others similarly situated for damages arising from the Defendants' violations of 15 U.S.C. § 1681 *et seq.*, the Fair Credit Reporting Act ("FCRA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 1681p et seq.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff is a resident of the State of New Jersey, County of Camden.

5. At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

6. Defendant Experian Information Solutions, Inc., is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f) and conducts substantial and regular business activities in this judicial district.

7. Experian is an Ohio corporation registered to do business in this State.

8. Experian may be served with process c/o CT Corporation System, 820 Bear Tavern Road, West Trenton, NJ 08628.

9. Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

10. At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

11. Experian PLC, the parent company for Experian, is traded on the London Stock Exchange under the symbol EXPN.

12. In July 2023 Experian PLC had a market cap of more than $27 billion.

13. Defendant Trans Union, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

14. Trans Union is a Delaware corporation registered to do business in this State.

15. Trans Union may be served with process c/o The Prentice-Hall Corporation System, Inc., 830 Bear Tavern Road, West Trenton, New Jersey 08628.

16. Trans Union is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

17. At all times material here to Trans Union disbursed such consumer reports to third parties under a contract for monetary compensation.

18. Trans Union, the parent company of Defendant Trans Union, is traded on the New York Stock Exchange under the symbol TRU.

19. In July 2023 Trans Union had a market cap of more than $15 billion.

20. Defendant Lexis Solutions is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

21. Lexis Solutions is a Georgia corporation doing business in this State.

22. Lexis Solutions may be served with process c/o C T Corporation Systems, 289 S Culver St, Lawrenceville, GA, 30046.

23. Lexis Solutions is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a.

24. At all times material here to Lexis Solutions disbursed such consumer reports to one or more third parties for monetary compensation.

25. RELX Group PLC, the parent company of Lexis Solutions, is traded on the New York Stock Exchange under the symbol RELX.

26. In August 2023 RELX Group PLC had a market cap of more than $61 billion.

27. Defendant ValidiFI, LLC, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

28. ValidiFI is a Florida company doing business in this State.

29. ValidiFI may be served with process c/o Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

30. ValidiFI is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a.

31. At all times material here, ValidiFI disbursed such consumer reports to third parties under a contract for monetary compensation.

## CLASS ALLEGATIONS

32. Plaintiff brings this claim on behalf of the following class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

33. The Class consists of:

   a. all individuals with addresses in the State of New Jersey;

   b. containing at least one inquiry on the individual's credit report or credit file;

   c. for whom a Bureau noted as deceased;

   d. regarding an individual who, at the time, was not listed on the Death Master File as deceased;

    e. which deceased notation was listed on or after a date two (2) years prior to the filing of this action and on or before a date twenty-one (21) days after the filing of this action.

34. The identities of all class members are readily ascertainable from the records of Defendants and those companies and entities on whose behalf they report credit and data.

35. Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action, and all members of their immediate families.

36. There are questions of law and fact common to the Plaintiff Classes, which common issues predominate over any issues involving only individual class members. The principal issue is whether the Defendants' reporting of living consumers as deceased violates 15 U.S.C. § 1681 *et seq*.

37. The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories. The Plaintiff will fairly and adequately protect the interests of the Classes defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor Plaintiff's attorneys have any interests, which might cause them not to vigorously pursue this action.

38. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

a. **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Class(es) defined above are so numerous that joinder of all members would be impractical.

b. **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Class(es) and those questions' predominance over any questions or issues involving only individual class members. The principal issue is whether the Defendants' reporting of living consumers as deceased violates 15 U.S.C. § 1681 *et seq*.

c. **Typicality:** The Plaintiff's claims are typical of the claims of each class's members. The Plaintiff and all members of the Class(es) have claims arising out of the Defendants' common uniform course of conduct complained of herein.

d. **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

e. **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

39. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Class(es) predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

40. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class(es) only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## FACTUAL ALLEGATIONS

41. Plaintiff incorporates the above allegations as if set forth here.

42. Upon information and belief, on a date better known to each Bureau, it prepared and issued consumer reports concerning the Plaintiff that included the Account.

43. For some or all of the period from April 2023 through June 2023, Plaintiff was being reported as deceased by each Bureau.

44. The period of time may be longer or shorter, Plaintiff is not completely sure.

45. On or about May 31, 2023, Plaintiff applied for credit with non-party Capital One Bank, N.A., and was denied credit.

46. Plaintiff was denied as she was listed by each Bureau as deceased.

47. Due to this deceased marking, Experian and TransUnion were also showing Plaintiff as not having a credit score.

48. Plaintiff is not deceased.

49. Plaintiff was not deceased between April and June 2023, either.

50. Plaintiff is very much alive.

51. The reporting of her being deceased is inaccurate.

52. Upon information and belief, the Social Security Administration (SSA) provides the Department of Commerce's National Technical Information Service (NTIS) a public file of death information.

53. NTIS distributes the public file of death information, also known as the public Death Master File (DMF), to other agencies and private organizations, including consumer reporting agencies.

54. Upon information and belief, each Bureau has a data exchange agreement with the SSA and/or NTIS to receive updated death information.

55. Upon information and belief, each Defendant failed to cross-check the DMF to verify whether Plaintiff was a part of the catalog of social security numbers that belong to deceased individuals.

56. Had each Bureau maintained reasonable procedures it would have realized that Plaintiff is not deceased.

57. Had each Bureau attempted to timely verify if Plaintiff was deceased, it would have realized she was in fact alive.

58. Each Bureau had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

59. The information described above, published by each Bureau, was inaccurate.

60. On or about June 2023, Plaintiff contacted non-Defendant Capital One to dispute the reporting of Plaintiff as deceased and the inaccurate information being reported about her.

61. It appears that in response to the dispute, the deceased marking was removed.

62. It is unclear to Plaintiff the precise timeline of the deceased reporting.

63. Despite the falsity and their actual or constructive knowledge thereof, Defendants reported false and inaccurate adverse information on the consumer report of the Plaintiff.

64. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's consumer report.

65. Defendants published and disseminated such inaccurate information to third parties, persons, entities and credit grantors.

66. Defendants knew or should have known the information was inaccurate.

67. At minimum, Defendants demonstrated a reckless disregard for the true facts.

68. These actions by Defendants caused extensive damage to Plaintiff.

## Damages

69. As a result of Defendants' failure to comply with the FCRA, Plaintiff has been damaged.

70. Defendants' erroneous reporting affected Plaintiff's reputation, creditworthiness, and credit score.

71. Plaintiff suffered damage to her reputation as it falsely appeared as if she was deceased.

72. A deceased person is unable to obtain credit.

73. A deceased person does not have a credit score.

74. This falsity was published to numerous third-parties.

75. This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's financial affairs.

76. Plaintiff has, inter alia, suffered damage by loss of time and money in trying to rectify Defendants' willful and negligent actions, loss of credit, loss of ability to purchase and benefit from credit, reputational harm, decreased (or complete lack of) credit score, a chilling effect on applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment for having false information on her credit report, for credit denial, and for having others see the false information.

77. At many times during this ordeal, Plaintiff did not have a credit score or credit report.

78. A lack of credit score or report here is because Plaintiff was marked as deceased.

79. Plaintiff was denied funding opportunities due to Defendants' actions.

80. Due to each of Defendants' actions, Plaintiff was unable to secure the necessary credit.

81. On or about June 16, 2023, Plaintiff's existing account with Afterpay was closed because "Afterpay is unable to open or establish an account because we couldn't verify the personal details provided. We are not able to overturn this decision. Please contact Experian to confirm the accuracy of your credit report."

82. When Plaintiff applied for funding from Capital One, she was denied funding because "Based on your credit report from one or more of the agencies on the back of this letter, applicant is reported as deceased."

83. The back of the Capital One letter listed each Bureau.

84. When Plaintiff applied for funding for a Revvi Visa Card issued by MRV Banks, she was denied funding because "[Plaintiff] did not meet PI Risk 5.0 Score threshold… based in whole or in part of information obtained in a report from [ValidiFI]".

85. Plaintiff was further damaged when she applied for homeowner's insurance and was denied.

86. When the insurance company looked up Plaintiff's Lexis Solutions report, she was marked as deceased.

87. Plaintiff was denied insurance because "subject deceased indicator on file".

88. Plaintiff was emotionally distraught and damaged and had difficulty with sleep.

89. Being reported as deceased increases a person's levels of stress and anxiety.

90. Due to Defendants' action Plaintiff was damaged.

## FIRST CAUSE OF ACTION
### (Violations of the FCRA as to each Bureau)

91. Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

92. This is an action for willful and/or negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

93. Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained or furnished concerning the Plaintiff.

94. Each Bureau has willfully and recklessly, or in the alternative negligently, failed to comply with the Act.

95. The failure of each Bureau to comply with the Act include but is not necessarily limited to:

    a) The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

    b) The failure to promptly delete information that was inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete; and

    c) The failure to take adequate steps to verify information each Bureau had reason to believe was inaccurate before including it in the credit report of the consumer.

96. As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

97. The conduct, action and inaction of each Bureau was willful rendering each Bureau liable for actual, statutory, and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

98. In the alternative, the conduct, action, and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

99. Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n-1681o.

100. WHEREFORE, Plaintiff demands judgment for damages together with attorney's fees and court costs pursuant to 15 U.S.C. §§ 1681n-1681o.

## DEMAND FOR TRIAL BY JURY

101. Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

    a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative, and Eliyahu Babad, Esq., as Class Counsel;

b) For actual damages provided and pursuant to 15 U.S.C. § 1681(o)(a) be awarded for each negligent violation as alleged herein;

c) For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

d) For statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);

e) For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

f) For Punitive damages provided and pursuant to 15 U.S.C. § 1681n(a)(2);

g) For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2) and 15 U.S.C. § 1640(a)(3);

h) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Dated: August 31, 2023

**STEIN SAKS, PLLC**

By: s/ Eliyahu Babad
Eliyahu Babad
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x121
EBabad@SteinSaksLegal.com

*Attorney for Plaintiff*